IN RE WHATLEY

[224 N.C. App. 267 (2012)]

---

IN THE MATTER OF POSHA WHATLEY

No. COA12-716

Filed 18 December 2012

**1. Appeal and Error—mootness—collateral consequences**

Respondent's appeal from an involuntary commitment was properly before the Court of Appeals, notwithstanding the fact that the period of commitment had ended, because of collateral legal consequences.

**2. Mental Illness—involuntary commitment—dangerous to herself—findings not sufficient**

Respondent's involuntary commitment on the basis that respondent was dangerous to herself was not upheld where the trial court's findings reflected respondent's mental illness, but did not indicate that respondent's illness or any of her symptoms would persist and endanger her within the near future.

**3. Mental Illness—involuntary commitment—dangerous to others—findings not sufficient**

Respondent's involuntary commitment on the basis that she was dangerous to others was not upheld where the findings per-

tained only to respondent's past conduct and drew no nexus between that conduct and future danger to others.

**4. Mental Illness—involuntary commitment—insufficient findings—remedy**

An involuntary commitment order that lacked sufficient findings was remanded for further findings, if any could be made.

Appeal by Respondent from order entered 18 January 2012 by Judge Regan A. Miller in Mecklenburg County District Court. Heard in the Court of Appeals 23 October 2012.

*Roy Cooper, Attorney General, by Charlene Richardson, Assistant Attorney General, for the State.*

*Staples S. Hughes, Appellate Defender, by John F. Carella, Assistant Appellate Defender, for Respondent.*

THIGPEN, Judge.

Posha Whatley ("Respondent") appeals from the trial court's involuntary commitment order, contending, *inter alia,* that the findings of fact in the order were insufficient to support her commitment. For the following reasons, we agree with Respondent's contention, and we reverse and remand the matter to the trial court for further proceedings consistent with this opinion.

## I.  Factual & Procedural Background

On 5 January 2012, Respondent was involuntarily committed to a mental health facility ("Presbyterian Hospital") pursuant to an affidavit and petition for involuntary commitment filed that day by her physician, Dr. Amishi Shah. The affidavit and petition requesting Respondent's commitment alleged that Respondent had been diagnosed with bipolar disorder, that she had been admitted with psychosis while taking care of her two-month-old child, that she remained disorganized and paranoid, that she was refusing to take her medications, and that she clearly represented a danger to herself or others if not treated. Based upon his 5 January 2012 examination of Respondent, Dr. Shah concluded that Respondent was "mentally ill" and "dangerous to self" and recommended that Respondent be committed as an inpatient at Presbyterian Hospital for 30 days. A court order was entered that day by Magistrate A. Williams finding that there were reasonable grounds to believe that the facts alleged in

the petition were true and ordering that Respondent be temporarily committed for examination and treatment at Presbyterian Hospital pending a hearing in district court.

Respondent was evaluated three times following her commitment and prior to her district court hearing. On 6 January 2012, Dr. Noel Ibanez examined Respondent and found that Respondent continued to exhibit bizarre, psychotic behavior, an inability to care for herself, poor insight, poor impulse control, and a tendency to place herself directly at risk of harm. From these findings, Dr. Ibanez concluded that Respondent was "mentally ill" and "dangerous to self" and recommended inpatient commitment for a period of 30 days. On 12 January 2012, Dr. Shah evaluated Respondent a second time, and, in his report based upon this evaluation, indicated that Respondent remained paranoid and disorganized with poor insight and judgment, that Respondent initially presented as manic and psychotic while caring for her two-month-old child, that she needed continued impatient stay for medication stabilization, and that she was "clearly at risk to self if discharged too soon." Dr. Shah again opined that Respondent was "mentally ill" and "dangerous to self" and recommended inpatient commitment for a period of 30 days. A court order filed 13 January 2012 indicates that following Dr. Shah's second evaluation, Respondent requested a continuance of her district court hearing in order "to discuss voluntary [commitment] with her doctor." On 18 January 2012, Dr. Shah again evaluated Respondent and made findings similar to those included in his previous reports, noting that Respondent had been admitted with psychosis while taking care of her two-month-old son, that she had a history of bipolar disorder, that she remained paranoid and disorganized with poor judgment, and that she needed continued stabilization. Dr. Shah also noted Respondent's statement to him that she did not plan to follow-up with treatment as an outpatient. Dr. Shah again recommended that Respondent be committed as an inpatient based on his opinion that she was mentally ill and a danger to herself; however, this time Dr. Shah recommended that Respondent be admitted as an impatient for 15 days, rather than 30 days, as he had recommended in his previous reports.

The matter of Respondent's involuntary commitment came on for hearing at a special proceedings court session in Mecklenburg County District Court on 18 January 2012. At the hearing, Dr. Shah indicated his recommendation—to which Respondent objected—that Respondent "continue to receive treatment at Presbyterian Hospital

up to an additional 15 days for inpatient treatment, for the balance of 90 days of outpatient treatment[.]" By order entered 18 January 2012, the trial court concluded that Respondent was mentally ill and dangerous to herself and others. The court ordered that Respondent be involuntarily committed at Presbyterian Hospital for a period not to exceed 15 days and thereafter committed to an outpatient facility for a period not to exceed 90 days.

On 30 January 2012, Respondent's treating physician at Presbyterian Hospital requested a hearing to extend Respondent's involuntary commitment. This request was rendered moot, however, when Respondent subsequently consented to inpatient treatment beyond the timeframe set forth in the 18 January 2012 order. Consequently, the trial court ordered that "no action be taken on Petitioner's Request for Re-hearing" and that Respondent remain under the outpatient terms of the 18 January 2012 commitment order. Respondent timely filed notice of appeal from the trial court's 18 January 2012 commitment order with this Court on 25 January 2012.

## II. Analysis

Respondent contends that the trial court erred in failing to record sufficient findings of fact in its order for involuntary commitment to support its conclusions that Respondent was dangerous to herself and others. We agree.

[1] Preliminarily, we note that Respondent's appeal is properly before us, notwithstanding the fact that the period of her involuntary commitment has ended. *In re Mackie*, 36 N.C. App. 638, 639, 244 S.E.2d 450, 451 (1978) (explaining that "a prior discharge will not render questions challenging the involuntary commitment proceeding moot"); *see also In re Webber*, 201 N.C. App. 212, 217, 689 S.E.2d 468, 472–73 (2009) (providing that "[w]hen the challenged order may form the basis for future commitment or may cause other collateral legal consequences for the respondent, an appeal of that order is not moot"). We accordingly undertake our review of the trial court's commitment order as follows:

> On appeal of a commitment order our function is to determine whether there was any competent evidence to support the "facts" recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the "facts" recorded in the order. We do not consider whether the evidence of respondent's mental

illness and dangerousness was clear, cogent and convincing. It is for the trier of fact to determine whether the competent evidence offered in a particular case met the burden of proof.

*In re Collins*, 49 N.C. App. 243, 246, 271 S.E.2d 72, 74 (1980) (citations omitted).

[2] N.C. Gen. Stat. § 122C-268(j) sets forth the criteria for involuntary commitment and provides that the trial court must "find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self . . . or dangerous to others . . . ." N.C. Gen. Stat. § 122C-268(j) (2011). The trial court must also record the facts that support its "ultimate findings," i.e., conclusions of law, that the respondent is mentally ill and dangerous to himself or others. *Id.*; *In re Booker*, 193 N.C. App. 433, 436, 667 S.E.2d 302, 304 (2008) (describing "[a] trial court's duty to record the facts that support its findings [as] 'mandatory' ").

The trial court here found the following facts "by clear, cogent and convincing evidence":

> Respondent was exhibiting psychotic behavior that endangered her and her newborn child. She is bipolar and was experiencing a manic stage. She was initially noncompliant in taking her medications but has been compliant over the past 7 days. Respondent continues to exhibit disorganized thinking that causes her not to be able to properly care for herself. She continues to need medication monitoring. Respondent has been previously involuntarily committed.

Respondent does not challenge any of the trial court's findings of fact, and these findings, therefore, are binding on appeal. *See In re Zollicoffer*, 165 N.C. App. 462, 469, 598 S.E.2d 696, 700 (2004). The trial court also checked a box in its order indicating its intention to find "as facts all matters set out in the physician's/eligible psychologist's report, specified below[.]" Although the court did not specify which report it sought to incorporate, this Court has previously indicated that the most recent report be incorporated under these circumstances. *Booker*, 193 N.C. App. at 437, 667 S.E.2d at 304 (holding that the trial court had incorporated by reference "the last physician's report" into its order). The most recent physician's report presented to the trial court here was Dr. Shah's 18 January 2012 report. We deduce from the fact that this report was completed on the day of the

hearing and from the fact that Dr. Shah was the only physician to testify at the hearing that the 18 January 2012 report was likely the report that the trial court intended to incorporate into its order. This report set forth the following findings:

> Patient admitted [with] psychosis while taking care of her two month old son. She has a [history of] Bipolar [disorder]. She remains paranoid, disorganized, intrusive. She tells me that she does not plan to follow up as an outpatient. She has very poor insight [and] judgment and needs continued stabilization.

As detailed below, we hold that even assuming that the trial court successfully incorporated the contents of Dr. Shah's 18 January 2012 report into its order, the order was still insufficient to support Respondent's involuntary commitment.

### A.  Dangerous to Self

N.C. Gen. Stat. § 122C-3 defines "dangerous to self" to mean that, within the relevant past, the individual's conduct has demonstrated the following:

> I.  That he would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; *and*
>
> II.  That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself[.]

N.C. Gen. Stat. § 122C-3(11)(a)(1) (2011) (emphasis added).

Our review of the trial court's findings, which we assume *arguendo* included the findings set out in Dr. Shah's report, indicates that the second prong of the "dangerous to self" inquiry is not satis-

**IN RE WHATLEY**

[224 N.C. App. 267 (2012)]

fied. In short, none of the court's findings demonstrate that there was "a reasonable probability of [Respondent] suffering serious physical debilitation within the near future" absent her commitment. Each of the trial court's findings pertain to either Respondent's history of mental illness or her behavior prior to and leading up to the commitment hearing, but they do not indicate that these circumstances rendered Respondent a danger to herself in the future. For instance, the court's findings concerning Respondent's psychotic behavior, history of bipolar disorder, and "manic stage" reflect only the court's ultimate finding of mental illness, which Respondent does not contest. Similarly, the findings that Respondent "remain[ed] paranoid," "exhibit[ed] disorganized thinking," and demonstrated "very poor insight [and] judgment" describe Respondent's condition at the time of the hearing, but do not in themselves indicate that Respondent presented a threat of "serious physical debilitation" to herself within the near future. The trial court also found that Respondent needed medication monitoring and that she did not plan to follow up as an outpatient, but, again, there is no finding that connects these concerns with the court's ultimate finding of "dangerous to self" as defined in N.C. Gen. Stat. § 122C-3(11)(a)(1). Simply put, the trial court's findings reflect Respondent's mental illness, but they do not indicate that Respondent's illness or any of her aforementioned symptoms will persist and endanger her within the near future. Accordingly, we cannot uphold the trial court's commitment order on the basis that Respondent was dangerous to herself.

### B. Dangerous to Others

[3] As an alternative basis for upholding the trial court's commitment order, we next address whether the court's findings of fact were sufficient to support its conclusion that Respondent was dangerous to others. *See In re Monroe*, 49 N.C. App. 23, 31-32, 270 S.E.2d 537, 541 (1980) (affirming an involuntary commitment order on the basis of dangerousness to others even though the evidence was insufficient to establish dangerousness to self). An individual is "dangerous to others" if

> within the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property; *and that there is a reasonable probability that this conduct will be repeated.* Previous episodes of dangerousness to

others, when applicable, may be considered when determining reasonable probability of future dangerous conduct. Clear, cogent, and convincing evidence that an individual has committed a homicide in the relevant past is prima facie evidence of dangerousness to others.

N.C. Gen. Stat. § 122C-3(11)(b) (2011) (emphasis added).

The only findings relevant to the trial court's conclusion that Respondent was dangerous to others are the court's findings that "Respondent was exhibiting psychotic behavior that endangered . . . her newborn child" and—as incorporated from Dr. Shah's report—that Respondent had been "admitted [with] psychosis while taking care of her two month old son." These findings are clearly inadequate to demonstrate "a reasonable probability that this conduct will be repeated," *see id.*, as the findings pertain only to Respondent's past conduct and draw no nexus between that conduct and future danger to others. Thus, the trial court's findings are insufficient to support its conclusion that Respondent was dangerous to others, and the commitment order cannot be upheld on this basis.

### III. Conclusion

[4] In sum, we hold that the trial court's findings of fact are insufficient to support its conclusions that Respondent presented a danger to herself and others. We believe that the appropriate remedy is to remand to the trial court for entry of additional findings—if any can be made—to support its conclusions. Absent additional findings, however, the commitment order cannot be upheld. We accordingly reverse the trial court's 18 January 2012 order and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

Judges McGEE and BRYANT concur.