An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-837

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

IN THE MATTER OF:

POSHA WHATLEY

Mecklenburg County
No. 12 SPC 66-RAM

Appeal by respondent from order entered 13 February 2013 by Judge Regan A. Miller in Mecklenburg County District Court. Heard in the Court of Appeals 9 December 2013.

    *Attorney General Roy Cooper, by Assistant Attorney General Charlene Richardson, for Petitioners-Appellee.*

    *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender John F. Carella, for Respondent-Appellant.*

ERVIN, Judge.

Respondent appeals from an order involuntarily committing her for inpatient mental health care for a period not exceeding fifteen days and for an additional period of outpatient care not to exceed ninety days. On appeal, Respondent argues that the trial court's findings of fact relating to the issue of dangerousness to herself and others lack adequate evidentiary support. After careful consideration of Respondent's challenges

to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be vacated.

## I. Factual Background

### A. Substantive Facts

#### 1. Pre-Hearing Reports

As of 5 January 2012, Dr. Amishi Shah determined that Respondent was bipolar; had been admitted to the hospital "with psychosis while taking care of her 2 month old"; remained "disorganized, paranoid," "refus[ed her] meds at times," and "clearly represents [a] danger if not treated."[1] On the following day, Dr. Noel Ibanez stated that Respondent "continues to exhibit bizarre, psychotic behavior [and an] inability to care for [her]self"; that she had "poor insight [and] poor impulse control"; and that she "[p]laced herself directly at risk of harm." As of 12 January 2012, Dr. Shah expressed the opinion that Respondent "remain[ed] paranoid" and "disorganized" with "poor insight[, and] judgment"; that she had "initially presented as manic [and] psychotic while caring for two month

---

[1] On the same date, Dr. Shah signed an examination report in which she stated that Respondent had a history of bipolar disorder; that she had been admitted to the hospital "with psychosis, erratic behavior, and inability to care for [her] 2 month old"; that she "remain[ed] provocative" and "paranoid"; that she "periodically refus[ed her] medications"; and that she had "very poor insight [and] judgment and requir[ed] continued inpatient treatment."

old"; that "[s]he need[ed] continued inpatient stay for medication stabilization"; and that she was "clearly at risk to [her]self if discharged too soon." On 18 January 2012, Dr. Shah concluded that Respondent, who had "a h[istory] of [b]ipolar d[isorder,]" had been "admitted [with] psychosis while taking care of her two month old son"; that she "remain[ed] paranoid, disorganized, [and] intrusive"; that "[s]he tells me that she does not plan to follow up as an outpatient"; and that she had "very poor insight, judgment and needs continued stabilization."[2]

## 2. Evidence in Support of Petition

### a. Dr. Shah's Testimony

At the evidentiary hearing held before the trial court, Dr. Shah testified that Respondent "was initially hospitalized for a manic episode with [post-partum] psychosis"; that she had "left her child at home"; and that "[s]he was brought in . . . by her sister because she was displaying psychotic . . . behavior that was putting herself and her child at risk." More specifically, Dr. Shah diagnosed Respondent as suffering from bipolar disorder, which is characterized by "mania and psychotic features." At the time of her initial admission, Respondent was

[2]As best we have been able to determine from our examination of the record, none of the reports summarized in this portion of our opinion were admitted into evidence at the hearing held before the trial court in this proceeding despite the fact that the admission of properly certified expert reports is authorized by N.C. Gen. Stat. § 122C-268(f).

"very disorganized, paranoid," and "more focused on being potentially dyslexic and feeling like she has ADD rather than focusing on . . . the more acute mental illness issues that are impacting her functioning." According to Dr. Shah, Respondent remained "manic and psychotic" and the treating physicians were "continuing to adjust her medications," having "had some difficulty finding the right medication [regimen] for her." In fact, Dr. Shah had adjusted Respondent's medication on the date of the hearing. Dr. Shah testified that Respondent "ha[d] a history of non-compliance to treatment" and had been "quite guarded and hesitant about even following through with this treatment," a fact "which g[ave Dr. Shah] additional cause for concern about discharging her too soon." However, Dr. Shah acknowledged that Respondent had been compliant with her medication regimen for the last one to two weeks. When asked why she thought that Respondent posed a danger to herself, Dr. Shah stated that she did not "think that she's thinking clearly enough to be able to care for herself as an outpatient right now," with Dr. Shah having reached this conclusion based on "her behavior," the fact that "[s]he remains . . . very disorganized in her speaking" and "in her behavior," and her inability to "imagine that [Respondent] could take her medications on her own.

## b. Statements of Respondent's Sister

After the conclusion of Dr. Shah's testimony and before the presentation of Respondent's evidence, the trial court asked, "with whom is [Respondent] living right now." In response to additional questions posed by the trial court, Respondent's sister, Nadia Campbell, stated that Respondent had been living with her husband before the present proceeding began, that Respondent's husband was "running from the law," that Ms. Campbell brought Respondent to the hospital, and that, on the occasion in question, Ms. Campbell had come to Respondent's house at about 9:00 p.m., that Respondent was sitting on her couch with the front door open, that Respondent's child was shaking, and that Respondent claimed to be ready to go to an appointment.[3]

## 3. Respondent's Evidence

Respondent testified that, upon release, she planned to live with her husband's aunt and uncle, who made their home in Georgia and were keeping her infant child. Respondent disputed the validity of Dr. Shah's concern that she would not "comply with outpatient treatment," stating that she and her husband, who also suffered from a mental illness, would "both together

---

[3]The record does not contain any indication that either Ms. Campbell or Respondent's mother, who also participated in this and a later colloquy with the trial court, were ever sworn or made subject to cross-examination.

monitor each other's medications and go to doctors together." According to Respondent, she could call on her husband and take advantage of assistance offered by other family members.

### 4. Conclusion of the Evidentiary Hearing

After the completion of Respondent's testimony, the trial court inquired if "anyone else want[ed] to provide any information." In response to this inquiry, Respondent's mother stated, over an objection lodged by Respondent's trial counsel, that Respondent had failed to take her medication two or three years earlier. After Respondent responded to this assertion by stating that her family had taken "everything away from [her] at that time," Respondent's trial counsel requested to be heard, after which the trial court heard a final argument from Respondent's trial counsel and announced its decision.

### B. Procedural History

On 5 January 2012, Dr. Shah submitted an affidavit and petition seeking to have Respondent involuntarily committed and conducted the necessary initial evaluation. A magistrate entered an order involuntarily committing Respondent later that day. After a second evaluation conducted on the following day, Dr. Shah determined that Respondent was mentally ill and dangerous to herself. After a commitment hearing was scheduled for 13 January 2012, Dr. Shah conducted another evaluation of

Respondent on the day prior to the scheduled hearing and recommended that Respondent be involuntarily committed for a period of thirty days on the grounds that Respondent was paranoid and "clearly at risk to [her]self."

At Respondent's request, the 13 January 2012 hearing was continued until 18 January 2012. On the morning of the rescheduled hearing, Dr. Shah evaluated Respondent again and recommended that she be committed for a fifteen day period followed by a period of outpatient treatment given Respondent's statement that she did not plan to participate in outpatient treatment; "remain[ed] paranoid, disorganized, [and] intrusive;" had taken care of her two-month old son while psychotic; and "need[ed] continued stabilization." At the conclusion of the 18 January 2012 hearing, the trial court entered an order providing that Respondent be involuntarily committed on an inpatient basis for a period of fifteen days and that she be involuntarily committed on an outpatient basis for an additional period not to exceed ninety days. Respondent noted an appeal to this Court from the trial court's order.

On 18 December 2012, this Court filed an opinion reversing the trial court's order and remanding this case to the trial court for further proceedings not inconsistent with our opinion on the grounds that the trial court had failed to make

sufficient findings of fact to support its involuntary commitment decision. On 13 February 2013, without receiving any additional evidence or hearing additional arguments from the parties, the trial court entered an order containing additional findings of fact and concluding that Respondent should be involuntarily committed on an inpatient basis for a period of fifteen days and that she should be involuntarily committed on an outpatient basis for an additional period not to exceed ninety days. Respondent noted an appeal to this Court from the trial court's order on remand.

## II. Legal Analysis

In her brief, Respondent argues that the trial court's order lacks adequate evidentiary support. More specifically, Respondent argues that the record does not support the trial court's determination that she posed a danger to herself or others as required by the relevant statutory provisions. Respondent's argument has merit.

## A. Standard of Review

The standard of review utilized in reviewing involuntary commitment orders is well-established.

> On appeal of a commitment order our function is to determine whether there was *any* competent evidence to support the "facts" recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or

> others were supported by the "facts" recorded in the order. *In re Underwood*, 38 N.C. App. 344, 347-48, 247 S.E.2d 778, 781 (1978); *In re Hogan*, 32 N.C. App. 429, 433, 232 S.E.2d 492, 494 (1977). We do not consider whether the evidence of respondent's mental illness and dangerousness was clear, cogent and convincing. It is for the trier of fact to determine whether the competent evidence offered in a particular case met the burden of proof. *In re Underwood*, *supra*, at 347, 247 S.E.2d at 781.

*In re Collins*, 49 N.C. App. 243, 246, 271 S.E.2d 72, 74 (1980). Thus, the ultimate issue that we must resolve in this case is whether the trial court's findings that Respondent was dangerous to herself and others had adequate evidentiary support.

### B. Overview of Involuntary Commitment Process

The involuntary commitment process is initiated by the execution of an affidavit and the submission of a petition alleging that the respondent is mentally ill and a danger to herself or others as those terms are defined in the relevant statutory provisions. N.C. Gen. Stat. § 122C-261(a). Assuming that the reviewing magistrate or clerk believes, based upon an examination of the petition and the affidavit, that there are reasonable grounds for believing that the respondent is mentally ill, the respondent may be ordered to undergo a mandatory evaluation. N.C. Gen. Stat. § 122C-261(a)-(b). In the event that the person conducting the evaluation concludes that the

respondent is mentally ill and a danger to either herself or others, the evaluator must set out the basis for this determination in writing and recommend that the respondent receive inpatient commitment. N.C. Gen. Stat. § 122C-263(d)(2). A second evaluation must be conducted within twenty-four hours of the respondent's arrival at the inpatient facility to which he or she was committed. Assuming that the respondent is found to be mentally ill and a danger to herself or others at this second evaluation, the respondent must be held until the commitment hearing. N.C. Gen. Stat. § 122C-266(a)(1).

"To support an inpatient commitment order, the court shall find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self, as defined in [N.C. Gen. Stat. §] 122C-3(11)a, or dangerous to others, as defined in [N.C. Gen. Stat. §] 122C-3(11)b," with the court being required to "record the facts that support its findings." N.C. Gen. Stat. § 122C-268(j). According to the relevant statutory provisions:

> a. "Dangerous to himself" means that within the relevant past:
>
> 1. The individual has acted in such a way as to show:
>
> I. That he would be unable, without care, supervision, and the continued assistance of others not otherwise

available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; and

II. That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself[.]

. . . .

Previous episodes of dangerousness to self, when applicable, may be considered when determining reasonable probability of physical debilitation, suicide, or self-mutilation.

b. "Dangerous to others" means that within the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another . . .

and that there is a reasonable probability that this conduct will be repeated. Previous episodes of dangerousness to others, when applicable, may be considered when determining reasonable probability of future dangerous conduct. . . .

N.C. Gen. Stat. § 122C-3(11).

In our initial opinion in this case, we noted that:

> The trial court here found the following facts "by clear, cogent and convincing evidence":
>
>> Respondent was exhibiting psychotic behavior that endangered her and her newborn child. She is bipolar and was experiencing a manic stage. She was initially noncompliant in taking her medications but has been compliant over the past 7 days. Respondent continues to exhibit disorganized thinking that causes her not to be able to properly care for herself. She continues to need medication monitoring. Respondent has been previously involuntarily committed.

*In re Whatley*, __ N.C. App. __, __, 736 S.E.2d 527, 530 (2012). After noting that the trial court appeared to have sought to incorporate Dr. Shah's 18 January 2012 report into its order by reference, we assumed, without deciding, that the contents of this report should be treated as additional findings of fact, stating:

> This report set forth the following findings:

> Patient admitted [with] psychosis while taking care of her two month old son. She has a [history of] Bipolar [disorder]. She remains paranoid, disorganized, intrusive. She tells me that she does not plan to follow up as an outpatient. She has very poor insight [and] judgment and needs continued stabilization.

*Id.* (alterations in original). After noting the nature and extent of the trial court's findings, we held that, "even assuming that the trial court successfully incorporated the contents of Dr. Shah's 18 January 2012 report into its order, the order was still insufficient to support Respondent's involuntary commitment" because "[e]ach of the trial court's findings pertain[ed] to either Respondent's history of mental illness or her behavior prior to and leading up to the commitment hearing" without "indicat[ing] that these circumstances rendered Respondent a danger to herself in the future." *Id.* at __, 736 S.E.2d at 530-31.

In its order on remand, the trial court found as a fact that:

> 1. [A]ll matters set forth in the physician report by Dr. Shah dated January 18, 2012 and the report [are] incorporated herein by reference as findings.
>
> 2. At the time of admission, Respondent was exhibiting psychotic behavior that endangered her and her newborn child. The child had to be removed from her custody by family members because of her inability to

care for the child. She is bipolar and was experiencing a manic stage. She was initially noncompliant in taking her medications and her condition had not stabilized, although she has been compliant over the past seven (7) days.

3. Respondent continues to exhibit disorganized thinking that causes her not to be able to properly or safely care for herself or her child. Respondent continues to need further medication monitoring to establish the correct dosage before being released from the hospital.

4. Respondent has been previously involuntarily committed.

5. Respondent remains paranoid and continues to have very poor insight into the nature and extent of her mental illness. Her failure to continue taking the prescribed medication in the correct dosage presents a threat of serious physical debilitation in the near future that will endanger her and creates a reasonable probability in the future of a repetition of the grossly irrational behavior that created a substantial risk of serious harm to her two-month-old child.

Thus, the ultimate issue before us is whether the record contains sufficient evidence to support these findings, in which the trial court essentially determined that Respondent was dangerous to herself or others based upon her "failure to continue taking the prescribed medication in the correct dosage."[4]

---

[4]A principal pillar underlying the State's argument that the record contained sufficient evidence to support the trial

-15-

At the hearing, Dr. Shah testified that (1) she was continuing to adjust Respondent's medications; (2) it had been difficult to develop a proper medication regimen for Respondent; (3) she had increased the amount of medication that Respondent was supposed to consume on the day of the hearing; (4) Respondent had been compliant with her medication regimen for between seven and fourteen days; and (5) she did not believe, based upon statements that Respondent had made to her, that Respondent would take her medication on her own. Although this evidence might suffice to show that there was some risk that Respondent would fail to comply with her medication regimen and although it might be reasonable to infer that Respondent and her child would be better off if she took her medication as prescribed, the record before us is completely devoid of any information concerning the results which one might reasonably expect in the event that Respondent took her medication as

court's "danger to self or others" determination assumes that the statements by Respondent's sister and mother during the course of the hearing should be treated as properly admitted evidence. Although the parties have vigorously disputed whether the State's assumption that the statements made by Respondent's sister and mother should be deemed to be part of the evidentiary record, we need not resolve that issue given that the finding in question refers to Respondent's "behavior prior to and leading up to the commitment hearing," a factor which is "not [an] indicat[ion] that these circumstances rendered Respondent a danger to herself [or her child] in the future," *Whatley*, __ N.C. App. at __, 736 S.E.2d at 531, and given that we have concluded that the trial court's order should be vacated on other grounds.

intended or the impact which any failure on Respondent's part to comply with her medication regimen would have upon her ability to avoid seriously debilitating herself or inflicting serious bodily injury upon her child.  In the absence of such evidence, we are unable to see how the trial court had an adequate basis for concluding that serious physical debilitation or serious bodily injury was likely to result from any non-compliance on Respondent's part with her medication regimen.  Although the State argues that such deleterious results can be inferred from the fact that Respondent was psychotic and that she had exposed her child to the cold, that argument effectively asks us to speculate about subjects which should be addressed in the testimony received at the hearing.  As a result, we conclude that the trial court's findings of fact concerning the extent to which Respondent's mental condition made her dangerous to herself or others lack adequate record support, a determination which requires us to vacate the trial court's order.[5]  *In re Salem*, 31 N.C. App. 57, 62, 228 S.E.2d 649, 652 (1976) (vacating an involuntary commitment order which this Court found to lack sufficient evidentiary support).

---

[5]Although Respondent has advanced additional constitutional and evidentiary challenges to the trial court's remand order, we need not address these arguments in light of our decision to vacate the trial court's remand order on the grounds set forth in the text of this opinion.

### III. Conclusion

Thus, we conclude that the record developed before the trial court does not suffice to permit a determination that Respondent should be subject to involuntary commitment. As a result, the trial court's order should be, and hereby is, vacated.

VACATED.

Chief Judge MARTIN and Judge MCCULLOUGH concur.

Report per Rule 30(e).