INMAN, Judge.
Alexandra Osteyee-Hoffman ("respondent") appeals from an order of involuntary commitment, arguing that: (1) the trial court's findings of fact do not support its conclusions of law that respondent was a danger to herself or others; and (2) the transcript of the commitment hearing is inadequate to allow for effective appellate review.
After careful review, we reverse the trial court's order.
Background
When these proceedings commenced, respondent was a thirty-year-old woman living with her fiancé and father. She was six months pregnant. Respondent had previously been assigned a guardian representative from the Department of Social Services, Sharon Kiddy ("Ms.Kiddy"), based on a mental disability.
On 22 May 2014, Ms. Kiddy filed an affidavit and petition for respondent to be involuntarily committed. In her petition, Ms. Kiddy alleged the following:
Respondent is making threats to "do violence" over her Facebook page. She is delusional in that she has stated: "I feel like I am about to blow up towers with my uterus." She feels like someone is going to take her unborn child and has stated: "And may I not have to kill anyone who try to take him." Her father says he is afraid of what she might do.
After being taken into custody, respondent was evaluated by Dr. Victor Rosado ("Dr.Rosado") at Davis Regional Medical Center. In his medical reports, Dr. Rosado indicated that respondent was having paranoid delusions that her parents were not her real parents and that she thought the attending physician wanted to harm her child. Dr. Rosado also noted that respondent made threats to harm Ms. Kiddy.
A hearing on the petition for involuntary commitment was conducted on 5 June 2014. Dr. Rosado and respondent were the only witnesses to testify. Due to technical difficulties with the sound recording equipment, much of the testimony was inaudible to the transcriptionist. For example, the transcript contains the following record of testimony by Dr. Rosado regarding respondent's behavior:
At that time there were concerns the victim had been showing (inaudible) and had become paranoid. She had been having multiple (inaudible) saying that she needed a gun to defend herself, and that she would kill anyone that would try to (inaudible). She had been making statements at the time that she was (inaudible) where she had been abducted and she (inaudible)....
She was (inaudible) had a guardian-there was some sort of concern (inaudible) in the hospital and to have an affair (inaudible). I looked at the (inaudible) then there were multiple (inaudible) to kill somebody (inaudible), some people (inaudible) I don't mind killing myself, hunting them down.... She clearly has some mental condition (inaudible) reality (inaudible) described violence and threatened violence (inaudible).
After hearing Dr. Rosado's testimony, the trial court entered an involuntary commitment order. The order incorporated a written report from Dr. Rosado into its findings, but no report with the file date specified by the trial court is included in the record. The trial court independently found that respondent had made threats of violence, claimed that her parents were not her real parents, believed that Ms. Kiddy was having an affair with her fiancé, denied having mental illness, and refused medication. The trial court also noted that Dr. Rosado did not feel that forcing medication on respondent was an appropriate course of action. Based on these findings, the trial court concluded that respondent was a danger to herself and others and ordered her to be committed to an inpatient facility for 180 days.[1] Respondent filed timely notice of appeal.
Grounds for Appellate Review
We must first consider whether this appeal is moot, given that respondent has already completed her 90-day commitment. Our Supreme Court has held that "[t]he possibility that respondent's commitment in this case might likewise form the basis for a future commitment, along with other obvious collateral legal consequences, convinces us that this appeal is not moot." In re Hatley,291 N.C. 693, 695, 231 S.E.2d 633, 635 (1977). The same risk of collateral legal consequences exists for respondent here. Accordingly, we hold that this appeal is not moot, and we will address the merits of respondent's contentions.
I. Factual Findings in Support of Conclusions of Law
Respondent first argues that the trial court's findings of fact do not support its conclusions of law that respondent was a danger to herself or others. We agree.
N.C. Gen.Stat. § 122C-268(j) (2013) sets out the criteria that must be met for the trial court to enter an order of involuntary commitment. The trial court must find "by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self ... or dangerous to others...." N.C. Gen.Stat. § 122C-268(j). The statute also requires the trial court to record the facts that support its findings. Id.We review a commitment order "to determine whether there was any competent evidence to support the 'facts' recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the 'facts' recorded in the order." In re Collins,49 N.C.App. 243, 246, 271 S.E.2d 72, 74 (1980). "The direction to the court to record the facts which support its findings is mandatory." In re Koyi,34 N.C.App. 320, 321, 238 S.E.2d 153, 154 (1977). Where the trial court fails to record sufficient facts supporting its conclusion that a respondent is a danger to himself or others, the order is subject to reversal. See id.
A. Danger to Self
N.C. Gen.Stat. § 122C-3(11)(a) defines "danger to self" as follows:
1. The individual has acted in such a way as to show:
I. That he would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; and
II. That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is givenpursuant to this Chapter. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself; or
2. The individual has attempted suicide or threatened suicide and that there is a reasonable probability of suicide unless adequate treatment is given pursuant to this Chapter; or
3. The individual has mutilated himself or attempted to mutilate himself and that there is a reasonable probability of serious self-mutilation unless adequate treatment is given pursuant to this Chapter.
N.C. Gen.Stat. § 122C-3(11)(a) (2013) (emphasis added).
Here, there is no allegation that respondent attempted suicide or self-mutilation. Therefore, respondent argues that because the trial court did not find the existence of a reasonable probability of respondent "suffering serious physical debilitation within the near future unless adequate treatment is given," id.,the trial court's findings of fact were insufficient to support the conclusion that respondent was dangerous to herself. We agree.
The holding from In re Whatley,--- N.C.App. ----, 736 S.E.2d 527 (2012), is applicable here. In In re Whatley,the respondent was involuntarily committed based on the legal conclusions that she was a danger to herself and others. The trial court found that that the respondent "was exhibiting psychotic behavior that endangered her and her newborn child," and that she "continues to exhibit disorganized thinking that causes her not to be able to properly care for herself." Id.at ----, 736 S.E.2d at 530. Regarding the legal conclusion that the respondent was a danger to herself, this Court determined that each of the trial court's findings pertained "to either [the respondent's] history of mental illness or her behavior prior to and leading up to the commitment hearing, but they do not indicate that these circumstances rendered [the respondent] a danger to herself in the future." Id.at ----, 736 S.E.2d at 531 (emphasis added) (citing N.C. Gen.Stat. 122C-3(11)(a)(1) (requiring a finding that "there is a reasonable probability of [the respondent's] suffering serious physical debilitation within the near future unless adequate treatment is given")). Because none of the trial court's findings indicated that the respondent's "symptoms [would] persist and endanger her within the near future," as required by section 122C-3(11)(a)(1), this Court overruled the trial court's legal conclusion that the respondent was a danger to herself. Id.
The trial court's findings here are similarly insufficient. Although the trial court found that respondent had made threats of violence, refused medication, and suffered from delusional thinking, there are no findings connecting respondent's previous behavior or mental illness with a threat of future harm to herself absent treatment. Furthermore, the trial court's incorporation of Dr. Rosado's physician report does not salvage the inadequate findings as to this issue. First, none of Dr. Rosado's notes address the probability of future harm if respondent were not involuntarily committed. Second, the trial court may not delegate its fact-finding duty by incorporating more detailed documents into its order. See, e.g., In re J.S.,165 N.C.App. 509, 511, 598 S.E.2d 658, 660 (2004) (noting that although the trial court has authority to incorporate written reports, it "may not delegate its fact finding duty" and "should not broadly incorporate these written reports from outside sources as its findings of fact"). Therefore, due to the lack of findings drawing a nexus between respondent's past behavior and the potential for future harm, we reverse the trial court's legal conclusion that respondent was a danger to herself.
B. Danger to Others
N.C. Gen.Stat. 122C-3(11)(b) defines "dangerous to others" as:
[W]ithin the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property; and that there is a reasonable probability that this conduct will be repeated.Previous episodes of dangerousness to others, when applicable, may be considered when determining reasonable probability of future dangerous conduct.
(Emphasis added).
In re Whatleyis also instructive on this issue. The trial court in that case found that the respondent "was exhibiting psychotic behavior that endangered ... her newborn child," and the court incorporated a physician's report that noted the respondent had been admitted with psychosis while taking care of her two-month-old son. In re Whatley,--- N.C.App. at ----, 736 S.E.2d at 531. This Court held that "[t]hese findings are clearly inadequate to demonstrate 'a reasonable probability that this conduct will be repeated,' [pursuant to section 122C-3(11)(b) ], as the findings pertain only to [the respondent's] past conduct and draw no nexus between that conduct and future danger to others." Id.
Here, like in In re Whatley,none of the trial court's findings draw a nexus between past conduct and future danger to others. Although the trial court found that respondent "has made threats of violence," there are no findings regarding the nature of those threats, when they were made, or most importantly, whether "there is a reasonable probability that this conduct will be repeated." N.C. Gen.Stat. § 122C-3(11)(b). The incorporated physician's reports indicated that respondent previously made threats to harm Ms. Kiddy, but the reports similarly lack any indication that the threats were likely to recur. Accordingly, based on this Court's holding in In re Whatleyand the plain language of section 122C-3(11)(b), we hold that the trial court's findings of fact were insufficient to support its legal conclusion that respondent was a danger to others.
In sum, the trial court's findings are insufficient to support its legal conclusions that respondent was either a danger to herself or others. Accordingly, the trial court's order is insufficient to order involuntary commitment pursuant to section 122C-268(j), and it is subject to reversal. See In re Koyi,34 N.C.App. at 321, 238 S.E.2d at 154. Therefore, we reverse the trial court's order of involuntary commitment. Given this disposition, we need not reach respondent's alterative argument that she is entitled to a new hearing due to the inadequacy of the transcript.
Conclusion
Based on the foregoing analysis, we reverse the trial court's order.
REVERSED.
Judges BRYANT and DAVIS concur.
Report per Rule 30(e).
Opinion
Appeal by respondent from order entered 5 June 2014 by Judge Deborah P. Brown in Iredell County District Court. Heard in the Court of Appeals 7 April 2015.

This order was later amended to require at least 90 days of inpatient treatment, which respondent completed.