McCULLOUGH, Judge.
Russelle Smith ("respondent") appeals from the trial court's involuntary commitment order. Respondent argues that neither the evidence nor the trial court's findings of fact support the conclusion that she was dangerous to herself or others. For the reasons stated herein, we reverse and remand.
I. Background
On 11 March 2015, a petition and affidavit was filed seeking the involuntary commitment of respondent based on respondent's bipolar disorder ; refusal to take medications; and mental condition described as, inter alia , "currently manic and psychotic, hostile, yelling, intrusive, paranoid, delusional, grandiose"; and hearing voices from God. The same day, a custody order for respondent's involuntary commitment was entered.
On 12 March 2015, Dr. David Litchford ("Dr. Litchford") completed an "Examination and Recommendation to Determine Necessity for Involuntary Commitment" in which he recommended that respondent receive inpatient commitment for thirty days and outpatient commitment for ninety days. Dr. Litchford opined that respondent was mentally ill and dangerous to self.
On 13 March 2015, Dr. Durga Bestha ("Dr. Bestha") completed an "Examination and Recommendation to Determine Necessity for Involuntary Commitment" in which he recommended respondent receive inpatient commitment for thirty days and outpatient commitment for ninety days.
The matter came on for hearing on 18 March 2015 before the Honorable Kimberly Best-Staton in Mecklenburg County District Court. The trial court entered an involuntary commitment order that same day. The trial court found "as facts all matters set out" in Dr. Bestha's 13 March 2015 report and "incorporated [the report] by reference as findings." The trial court also made several additional findings and concluded respondent was mentally ill and dangerous to self and others and ordered her committed to an inpatient facility for up to thirty days.
Respondent filed notice of appeal on 16 April 2015.
II. Discussion
At the outset, respondent asserts that although the term of her involuntary commitment has expired, her appeal is not moot. We agree. Our Courts have held that "a prior discharge will not render questions challenging the involuntary commitment proceeding moot. When the challenged order may form the basis for future commitment or may cause other collateral legal consequences for the respondent, an appeal of that order is not moot." In re Webber , 201 N.C. App. 212, 217, 689 S.E.2d 468, 472-73 (2009) (internal quotation marks and citations omitted). Therefore, we address the merits of respondent's appeal.
Respondent's sole argument on appeal is that the trial court's order must be reversed because neither the evidence nor the findings of fact support the conclusion that she was dangerous to herself and others.
On appeal, our Court's function is
to determine whether there was any competent evidence to support the "facts" recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the "facts" recorded in the order.
In re Collins , 49 N.C. App. 243, 246, 271 S.E.2d 72, 74 (1980) (emphasis in original).
To support an inpatient commitment order, the court shall find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self, as defined in G.S. 122C-3(11) a., or dangerous to others, as defined in G.S. 122C-3(11) b. The court shall record the facts that support its findings.
N.C. Gen. Stat. § 122C-268(j) (2015).
N.C. Gen. Stat. § 122C-3(11) provides that:
a. "Dangerous to himself" means that within the relevant past:
1. The individual has acted in such a way as to show:
I. That he would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; and
II. That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself; or
2. The individual has attempted suicide or threatened suicide and that there is a reasonable probability of suicide unless adequate treatment is given pursuant to this Chapter; or
3. The individual has mutilated himself or attempted to mutilate himself and that there is a reasonable probability of serious self-mutilation unless adequate treatment is given pursuant to this Chapter.
Previous episodes of dangerousness to self, when applicable, may be considered when determining reasonable probability of physical debilitation, suicide, or self-mutilation.
b. "Dangerous to others" means that within the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property; and that there is a reasonable probability that this conduct will be repeated. Previous episodes of dangerousness to others, when applicable, may be considered when determining reasonable probability of future dangerous conduct. Clear, cogent, and convincing evidence that an individual has committed a homicide in the relevant past is prima facie evidence of dangerousness to others.
N.C. Gen. Stat. § 122C-3(11) (2015).
In its order, the trial court checked the box on the printed form that reads: "Based on the evidence presented, the Court by clear, cogent and convincing evidence finds as facts all matters set out in the physician's[ ] report, specified below, and the report is incorporated by reference as findings." The date of the last physician's report was 13 March 2015 and the physician's name was listed as Dr. Bestha. The trial court also made the following additional findings:
Respondent has a long history of hospital admissions and was first admitted in 1986. Respondent does not consent to the recommendation of the Dr. The respondent was previously admitted to BHC 12/2013 and was released and did not comply with meds. Respondent believes that she is living in a chlorine infested apartment which has killed 10 plants although she has a "green" thumb. Respondent believes that she is under surveillance and people are threatening her and she can barely sleep. The entire time the doctor is testifying, respondent is shaking her head in agreement or disagreement.
Respondent also believes that the staff is giving her medication so that they can move her papers around. Respondent[']s psychosis and delusions predictably would result in dangerousness to herself and/or others in that she is still refusing medication and does not believe she suffers from a mental illness. Her believe [sic] that she is being surveilled and/or people trying to kill her may result in her doing something dangerous to people she believes are trying to harm her.
After thoughtful review, we hold that neither the evidence nor the trial court's findings are sufficient to support the conclusions that respondent was dangerous to herself and others. Therefore, the trial court erred in ordering respondent to be committed to an inpatient facility for up to thirty days. The trial court's order is reversed and remanded for further findings.
REVERSED AND REMANDED.
Report per Rule 30(e).
Judges CALABRIA and INMAN concur.