IN THE MATTER OF PATRICIA A. CRAINSHAW

No. 8119DC416

(Filed 3 November 1981)

Insane Person § 1.2— involuntary commitment—dangerous to self—dangerous to others—insufficiency of evidence

The evidence was insufficient to support a valid commitment order under G.S. § 122-58.7(i) as the evidence supporting the trial court's conclusion was that respondent had forgotten to turn off the stove on many occasions, resulting in burning of numerous pots and pans and a formica top; that she was forgetful; that she frequently talked to the wall; and that she appeared to be out of touch with her real surroundings. These facts do not support conclusion or ultimate finding of dangerousness to self as defined by G.S. § 122-58.2(1)a.

Judge WEBB dissenting.

APPEAL by respondent from *Tate, Judge.* Order entered 5 March 1981 in District Court, BURKE County. Heard in the Court of Appeals 14 October 1981.

On 24 February 1978 Mitchell Crainshaw initiated proceedings for the involuntary commitment of his wife, Patricia Crainshaw, pursuant to Ch. 122, Article 5A, of the North Carolina General Statutes. He alleged respondent was a mentally ill person who was dangerous to herself or others. On the basis of this petition, a deputy clerk of court ordered that respondent be taken into custody in order that she might be examined by a qualified physician.

Respondent was then examined by Dr. James A. Buckingham in Concord, North Carolina. Dr. Buckingham determined that respondent was mentally ill and dangerous to herself or others.

Respondent was next transferred to Broughton Hospital, where she was examined by Dr. Michael Knoelke, who also found respondent to be mentally ill and potentially dangerous to herself or others.

The matter was heard at Broughton Hospital, Burke County, on 5 March 1981, respondent being present and represented by counsel. At the hearing Dr. Knoelke testified that he had diagnosed the respondent as having a manic depressive illness, manic phase. He testified that the husband and daughter of the respond-

ent had testified that the respondent had often forgotten to turn off the stove resulting in the burning of numerous pots and pans and a formica top. Also they testified that the respondent is extremely forgetful, frequently talks to the wall and appears out of touch with her real surroundings.

Respondent testified in her own behalf and denied the allegations. In her opinion she was able to care for herself. She had done her own housework and cooking prior to her admission to the hospital. She testified that she was quite capable of meeting her needs for her basic necessities, at the present time and prior to her admission to the hospital.

At the conclusion of the hearing, the court made the following findings of fact:

Respondent is diagnosed as having Manic Depressive Illness, Manic Phase. The testimony of her husband and daughter shows that she has forgotten to turn off the stove on many occasions, with the result that numerous pots and pans have been burned, and even the formica top. She is extremely forgetful, frequently talks to wall, and appears to be out of touch with her real surroundings. The court concludes that this unawareness amounts to severely impaired insight and judgment, raising a strong inference that she is unable to care for herself.

From the foregoing findings, the court concluded as a matter of law that respondent was mentally ill and dangerous to herself and ordered that the respondent be committed to Broughton Hospital for a period not to exceed 30 days and that the respondent be committed to the Out-Patient Clinic of Cabarrus County for 60 days. From this ruling, the respondent appealed.

*Attorney General Edmisten by Associate Attorney Max A. Garner for the State.*

*Special Counsel for the Mentally Ill Howard C. McGlohon for the respondent.*

MARTIN (Robert M.), Judge.

N.C. Gen. Stat. § 122-58.7(i) requires as a condition to a valid commitment order that the district court find two distinct facts

by clear, cogent, and convincing evidence: first that the respondent is mentally ill or inebriate and second, that the respondent is dangerous to herself or others.

It is for the trier of fact to determine whether evidence offered in a particular case is clear, cogent, and convincing. Our function on appeal is simply to determine whether there was any competent evidence to support the factual findings made. *In re Monroe*, 49 N.C. App. 23, 270 S.E. 2d 537 (1980); *In re Underwood*, 38 N.C. App. 344, 247 S.E. 2d 778 (1978).

The respondent contends that there is no competent evidence to support a finding or conclusion of dangerousness to self, either in the facts recorded in the court's order or in the record. The phrase "dangerous to himself" when used in Article 5A is defined in N.C. Gen. Stat. § 122-58.2(1) as follows:

    a. "Dangerous to himself" shall mean that within the recent past:

        I. That he would be unable without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; and

        II. That there is a reasonable probability of serious physical debilitation to him within the near future unless adequate treatment is afforded pursuant to this Article. A showing of behavior that is grossly irrational or of actions which the person is unable to control or of behavior that is grossly inappropriate to the situation or other evidence of severely impaired insight and judgment shall create a prima facie inference that the person is unable to care for himself. . . .

The statutory language established a two prong test for dangerousness to self. The first prong addresses self-care ability regarding one's daily affairs. The second prong, which also must be satisfied for involuntary commitment to result, mandates a specific finding of a probability of serious physical debilitation resulting from the more general finding of lack of self-caring abili-

ty. We have held that pursuant to G.S. 122-58.7(i) the facts supporting danger must be recorded by the trial court. *In re Caver*, 40 N.C. App. 264, 252 S.E. 2d 284 (1979); *In re Jacobs*, 38 N.C. App. 573, 248 S.E. 2d 448 (1978).

We must agree with respondent that neither the facts recorded by the trial court nor the record supports a conclusion or ultimate finding of dangerousness to self. Alternatively, even if indicative of some danger, the facts do not support the finding that "[t]here is a reasonable probability of serious physical debilitation to the Respondent within the near future. . . ."

The judgment in this case discloses that the trial judge relied solely upon the testimony of the respondent's husband and daughter in its finding that the respondent was dangerous to herself. The court found that the respondent had forgotten to turn off the stove on many occasions, resulting in the burning of numerous pots and pans and a formica top; that she was forgetful; that she frequently talked to the wall; and that she appeared to be out of touch with her real surroundings. These facts may be evidence of mental illness, or under the broad language of § 122-58.2(1)a.1.I., danger characterized by inability to "exercise self-control, judgment, and discretion in the conduct of his daily responsibilities. . . ." However, these facts do not meet the second prong of the test, a reasonable probability of serious physical debilitation to her in the near future. The State presented no evidence showing the present or future effect of this behavior on the respondent. Forgetfulness and talking to the wall alone do not amount to danger as contemplated in the controlling statute.

We do not consider the respondent's remaining assignment of error.

For the reasons stated, the decision of the district court is

Reversed.

Judge WELLS concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent from the majority. Dr. Knoelke testified that he had diagnosed the respondent as having a manic depressive illness, manic phase. Webster's Third New International Dictionary (1971) defines a manic depressive as exhibiting features similar to manic depressive psychosis which it defines as "a major mental disorder manifested either by mania or by psychotic depression or by alternating mania and depression." I can only conclude from this that the respondent was suffering from a serious mental disease.

The majority holds that neither the facts recorded nor the record supports a conclusion of dangerousness to self. I believe the facts recorded which are supported by the evidence as to the respondent's major mental disorder, her behavior in not turning off the stove which resulted in burning the utensils and formica top, her talking to the walls, her being extremely forgetful, and her appearance of being out of touch with her real surroundings support a conclusion that the respondent was not able "to exercise self-control, judgment and discretion in the conduct of [her] daily responsibilities and social relations." I also believe the facts recorded support a conclusion that the respondent's behavior was "grossly inappropriate to the situation." This creates a *prima facie* inference that the respondent was not able to care for herself which satisfies the requirement that there was a probability of serious physical debilitation to the respondent if she had not been treated.

I would hold that there was sufficient evidence from which the district court could find facts supporting a conclusion that the respondent was mentally ill and dangerous to herself and the district court should not be reversed for so finding.

I vote to affirm.