IN THE MATTER OF: SHIRLEY JACKSON

No. 8212DC741

(Filed 1 February 1983)

1. **Insane Persons § 1.2— mental illness—dangerousness to self or others—sufficiency of evidence**

   The trial court's finding that respondent was mentally ill was supported by the testimony of a psychiatrist who examined respondent on the day respondent was admitted to a mental institution, and the court's finding that respondent was dangerous to herself or others was supported by the testimony

of respondent's brother and her mother concerning threats and acts of violence by respondent.

**2. Constitutional Law § 4; Insane Persons § 1.1— involuntary commitment—no standing to challenge constitutionality of statutes**

   Respondent had no standing to challenge the constitutionality of involuntary commitment statutes providing that the State would be represented at involuntary commitment hearings held at one of the four regional psychiatric centers and permitting the trial judge to preside at the involuntary commitment hearing and also question witnesses at the same proceeding since respondent was not adversely affected by the statutes. G.S. 122-58.7(b); G.S. 122-58.24.

APPEAL by respondent from *Cherry, Judge*. Order entered 29 April 1982 in District Court, CUMBERLAND County. Heard in the Court of Appeals 18 January 1983.

This is an appeal by respondent from an order involuntarily committing her to Dorothea Dix Hospital in Raleigh.

Respondent's mother obtained a petition for involuntary commitment on 20 April 1982. Respondent was involuntarily committed on the same day.

The petitioner presented three witnesses at the 29 April 1982 hearing. Doris Hart, respondent's mother, described respondent's behavior. She stated "I was afraid she was going to hurt herself because she threatened a lot of people in the area."

Vernon Hart, respondent's brother, testified that the respondent threatened to cut his throat and did cut his hand on 15 April 1982.

Dr. Stephen Jones, the screening psychiatrist at Dorothea Dix Hospital on the day that the respondent was admitted, stated that the respondent had "evidence of delusional thinking" and seemed "somewhat elated with hyperactivity." He described her condition as "bipolar disorder, manic type" and concluded that "I believe she is mentally ill." Jones added "I feel she would be a danger to herself and others outside a confined environment" and concluded that she was in need of commitment.

Respondent's motion to dismiss based on insufficiency of the evidence was denied.

Two witnesses for the respondent testified that they had not seen her exhibit irrational behavior and that her conversation

was coherent. Maxine Best, respondent's former attorney, stated that the respondent had not threatened to kill anyone in her presence.

At the close of all of the evidence, respondent's renewed motion to dismiss was denied.

An order involuntarily committing the respondent to Dorothea Dix Hospital for 90 days was entered at the conclusion of the hearing. It stated "the Respondent is mentally ill and is imminently dangerous to herself or others and ought to be committed for treatment." From this order, respondent appealed.

*Attorney General Edmisten, by Assistant Attorney General Wilson Hayman, for the State.*

*Assistant Public Defender Richard B. Glazier for the respondent.*

ARNOLD, Judge.

[1] Respondent first argues that the trial court's conclusion that she was dangerous to herself or others was unsupported by evidence. We disagree.

G.S. 122-58.7(i) states:

> To support a commitment order, the court is required to find, by clear, cogent, and convincing evidence, that the respondent is mentally ill or inebriate, and dangerous to himself or others, or is mentally retarded, and because of an accompanying behavior disorder, is dangerous to others. The court shall record the facts which support its findings.

Under the statute, two distinct facts must be found by clear, cogent, and convincing evidence: "first, that the respondent is mentally ill or inebriate and second, that the respondent is dangerous to himself or others." *In re Monroe*, 49 N.C. App. 23, 28, 270 S.E. 2d 537, 539 (1980).

It is not our function on appeal to determine if the evidence offered meets the statutory standard. Instead, our job "is simply to determine whether there was any competent evidence to support the factual findings made." *In re Crainshaw*, 54 N.C. App. 429, 431, 283 S.E. 2d 553, 554 (1981).

We find sufficient competent evidence to support the order here. Dr. Jones' observations of the respondent supported his conclusion and the court's finding that she is mentally ill. The testimony of Doris and Vernon Hart about the respondent's threats and acts of violence support a finding that she is dangerous to herself or others. Thus, the statutory standards are met.

Respondent next makes three untenable arguments attacking the lack of counsel for the petitioner in an involuntary commitment proceeding as a constitutional violation. She contends that the procedure violates her constitutional rights to due process, equal protection and a fair and impartial hearing.

We first note that the respondent was effectively represented by counsel at the commitment hearing. Thus, it is difficult to find prejudice to her because the petitioner did not have counsel.

[2] Respondent attacks two parts of the statute as unconstitutional. First, G.S. 122-58.7(b) and -58.24 provide that the State will be represented at involuntary commitment hearings held at one of the four regional psychiatric centers in North Carolina. There is no such provision guaranteeing counsel for the State or the petitioner for hearings held away from the centers.

Respondent's other argument is that it is unconstitutional to allow the trial judge to preside at an involuntary commitment hearing and also question witnesses at the same proceeding.

A litigant who challenges a statute as unconstitutional must have standing. To have standing, he must be adversely affected by the statute. *State v. Mems*, 281 N.C. 658, 190 S.E. 2d 164 (1972) and cases cited therein. *See also* 16 C.J.S. *Constitutional Law* § 76 (1956).

We find no prejudice to the respondent in the challenged portions of the statute. Thus, she has no standing to challenge their constitutionality.

The comments of the court in *French v. Blackburn*, 428 F. Supp. 1351 (M.D.N.C. 1977), *aff'd*, 443 U.S. 901 (1979), which held that our statutory scheme for involuntary commitment is constitutional, are persuasive. "The Court is of the general opinion

that the North Carolina General Assembly has enacted an excellent legislative scheme which adequately protects the interests of all who may be involved in an involuntary commitment proceeding." 428 F. Supp. at 1354. *See generally*, Miller and Fiddleman, *Involuntary Civil Commitment in North Carolina: The Result of the 1979 Statutory Changes*, 60 N.C. L. Rev. 985 (1982) (a description and analysis of the law in North Carolina in this area).

Affirmed.

Judges HILL and WHICHARD concur.