IN RE: CALVIN LOWERY

No. 9226DC382

(Filed 4 May 1993)

**1. Hospitals and Medical Facilities or Institutions § 59 (NCI4th) — mental illness — inpatient commitment rehearing — examination by two physicians not required**

The provision of N.C.G.S. § 122C-276(d) that respondent has the same rights at his rehearing as he had at the initial hearing does not require that respondent be examined by two

physicians for purposes of his inpatient commitment rehearing held pursuant to N.C.G.S. § 122C-276, it being sufficient that respondent was examined by only one physician to determine whether his continued inpatient commitment was necessary.

**Am Jur 2d, Hospitals and Asylums § 12.**

2. **Hospitals and Medical Facilities or Institutions § 59 (NCI4th) — mental illness and dangerousness to self — outpatient ability — inpatient commitment — sufficiency of evidence**

The evidence supported the trial court's conclusions that respondent was mentally ill and dangerous to himself, and the trial court properly committed respondent to Broughton Hospital for inpatient treatment even though respondent's psychiatrist testified that he was suitable for outpatient treatment, where the evidence at the inpatient commitment rehearing showed that respondent's condition of chronic mental illness and polysubstance abuse had not changed since his initial commitment; respondent required anti-psychotic medications; respondent refused to take his medications or to eat properly and would be unable to care for himself if returned to his mother's home; respondent had a history of bizarre, aggressive thoughts and behavior; and respondent refused to consider placement in a rest home and was incapable of surviving in a less structured setting.

**Am Jur 2d, Hospitals and Asylums § 12.**

Appeal by respondent from order entered 10 January 1992 by Judge Richard A. Elkins at the special proceedings session of the Mecklenburg County District Court at the Mecklenburg County Mental Health Center. Heard in the Court of Appeals 2 April 1993.

On 19 December 1991, respondent's mother petitioned for his involuntary commitment due to his being mentally ill and dangerous to himself and others. Subsequently, respondent was examined and two psychiatrists recommended that he be committed as an inpatient. By order dated 31 December 1991, respondent was committed to the Mental Health Center on an inpatient basis for a period not to exceed twenty-five days followed by an outpatient commitment not to exceed sixty-five days. While institutionalized, respondent's attending psychiatrist, Dr. B.K. Noll, reexamined him and determined that respondent required long-term care. Dr. Noll recom-

**IN RE LOWERY**

[110 N.C. App. 67 (1993)]

mended that respondent be involuntarily committed to Broughton Hospital for up to ninety days.

The Court held a rehearing pursuant to G.S. 122C-276 on 10 January 1992 at which Dr. Noll testified that respondent's condition of chronic mental illness and polysubstance abuse had not changed since his initial commitment, that he required anti-psychotic medications which he refused to take, that he would not eat properly, and that respondent was unable to return to his mother's home and would be unable to care for himself if he returned home. Dr. Noll also testified that while medically respondent was suitable for outpatient treatment, he refused to consider the suggestion of a rest home as alternative placement. Thus, due to respondent's refusal to go to a rest home and his inability to live independently, Dr. Noll recommended inpatient commitment to Broughton Hospital. Hilda Rakes, respondent's caseworker, also testified that respondent would be unable to survive without supervision.

Respondent testified that he knew what his medicines were and that he would take them. He stated that he had lived alone before and knew that he could do so again. Respondent also recounted that he had purchased food with food stamps and affirmed that he did not want to go to a rest home.

After the rehearing, the Court concluded that respondent was unable to care for himself on an outpatient basis and that he would not go to a structured environment at a rest home. Thus, after determining that respondent was mentally ill and dangerous to himself, the Court ordered respondent committed to Broughton Hospital on an inpatient basis for a period not to exceed ninety days. Respondent appealed.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Kathleen U. Baldwin, for the State.*

*Assistant Public Defender Cherie Cox for respondent-appellant.*

MARTIN, Judge.

[1] Respondent contends that the trial court erred (1) in failing to require the examinations of two independent physicians for purposes of the inpatient commitment rehearing and (2) in ordering the inpatient commitment of the respondent when there was evidence that he was suitable for outpatient commitment. We affirm the order of the trial court.

Respondent's first argument is based on the fact that the trial court chose to treat the second hearing as a rehearing under G.S. 122C-276. That section provides in part as follows:

(d) Notice and proceedings of rehearings are governed by the same procedures as initial hearings and the respondent has the same rights he had at the initial hearing including the right to appeal.

Respondent asserts that the above provision requires a specific obligation, before the rehearing, to conduct a second examination by a physician within 24 hours of arrival at an inpatient facility pursuant to G.S. 122C-266 just as is required for the initial commitment hearing. In this case respondent was examined only by a single physician, Dr. Noll, prior to the rehearing.

We agree with the State's position that the portion of the statute quoted above merely refers to the rights of a respondent at the rehearing proceeding itself and does not require a repetition of every occurrence surrounding the initial hearing. We do not find, nor does respondent cite to us, any support for a contrary position.

G.S. 122C-263(a) requires that, in most instances, a respondent believed to be mentally ill and in need of commitment must be taken without unnecessary delay to an area facility for initial examination by a physician or eligible psychologist. G.S. 122C-266 then requires a second examination for inpatient commitment pending a hearing and provides in part that "within 24 hours of arrival at a 24-hour facility . . . the respondent shall be examined by a physician." We believe this language demonstrates that the purpose of the second examination is to protect the rights of a respondent who has been taken to a medical facility immediately prior thereto to insure that he was properly committed.

In this case, respondent's initial commitment had been accomplished in accordance with the statute. The purpose of Dr. Noll's second examination was to determine whether continued inpatient commitment was necessary. There was no longer a question of whether respondent's initial commitment was necessary. The words "within 24 hours of arrival" demonstrate the applicability of that provision to the initial commitment phase. It would not make sense to apply that provision to the circumstances of the rehearing at which time there is no longer a question of whether

the initial commitment had been proper. The provision of G.S. 122C-276 quoted above requires only that the respondent should have the same procedural rights at the rehearing itself as he did at his initial hearing. There is no showing on the record before us that such rights were not provided.

[2] Respondent also contends that the trial court erred in ordering his commitment as an inpatient because medical and legal evidence existed that respondent was suitable for outpatient commitment. Respondent contends that outpatient treatment, for which Dr. Noll stated that respondent was suitable, was a less restrictive mode of treatment, and that outpatient treatment was available in forms other than nursing homes. Respondent asserts that his mere refusal to go to a nursing home did not convert his medical condition into one meriting a ninety day involuntary commitment. We disagree.

On appeal from an order of commitment, the questions for determination are (1) whether the court's ultimate findings of mental illness and danger to self are supported by the facts which the Court recorded in its order as supporting its findings, and (2) whether, in any event, there was competent evidence to support the court's findings. *In re Frick*, 49 N.C. App. 273, 271 S.E.2d 84 (1980). G.S. 122C-268 requires that the trial court find two distinct facts by clear, cogent, and convincing evidence: first that the respondent is mentally ill, and second, that he is dangerous to himself or others. *In re Jackson*, 60 N.C. App. 581, 299 S.E.2d 677 (1983). On appeal it is this Court's function to determine if the trial court's findings with respect to respondent's mental illness and dangerousness are supported by any competent evidence; whether that evidence, however, is "clear, cogent and convincing" is for the trier of fact alone to determine. *In re Collins*, 49 N.C. App. 243, 271 S.E.2d 72 (1980); *Jackson, supra*.

In this case the trial court found that the respondent was both mentally ill and dangerous to himself. "Dangerous to himself" is defined in G.S. 122C-3(11) as meaning that within the relevant past:

1. The individual has acted in such a way as to show:

I. That he would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy

his need for nourishment, personal or medical care, shelter, or self-protection and safety; and

II. That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself.

"Mental illness" is defined when applied to an adult as:

[A]n illness which so lessens the capacity of the individual to use self-control, judgment, and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under treatment, care, supervision, guidance, or control.

N.C. Gen. Stat. 120C-3(21).

We have held specifically that the failure of a person to properly care for his/her medical needs, diet, grooming and general affairs meets the test of dangerousness to self. *In re Medlin*, 59 N.C. App. 33, 295 S.E.2d 604 (1982). The evidence presented at the rehearing was competent to support the finding that respondent was mentally ill and dangerous to himself.

The evidence presented at the rehearing demonstrated that respondent refused to comply with a recommendation that he be placed in a rest home setting; and that he was absolutely incapable of surviving safely in any setting less structured because of his chronic mental illness and polysubstance abuse. Dr. Noll also testified that respondent had a history of bizarre, aggressive thoughts and behavior. The evidence further demonstrated that respondent refused to take his medication or to eat properly and would be unable to care for himself if returned home. We hold that this evidence is competent to support the trial court's conclusions that respondent was mentally ill and dangerous to himself within the statutory definitions of those terms.

The mere fact that respondent may have been suitable for outpatient commitment does not require that result as both respondent's caseworker and respondent himself testified that he

IN RE WILL OF MOORE

[110 N.C. App. 73 (1993)]

would not go to the rest home. Respondent failed to present any alternative outpatient treatment possibilities. Thus, the trial court's finding that respondent met the criteria for inpatient commitment was supported by sufficient competent evidence.

Affirmed.

Judges EAGLES and JOHN concur.