BRYANT, Judge.
Where the trial court's findings of fact reflect that there was a reasonable probability of respondent suffering serious physical debilitation within the near future unless adequate treatment was given, and which findings in turn support the trial court's conclusion that respondent posed a danger to herself, we affirm the involuntary commitment order.
On 23 December 2016, Dr. Lane Smith of Lexington Medical Center filed an Affidavit and Petition for Involuntary Commitment of respondent R.R. Dr. Smith reported that respondent had a "history of schizophrenia and non-compliance," that she stated her family was trying to kill her, and "that she want[ed] to die." On 26 November 2016, Dr. Smith completed an Examination and Recommendation to Determine Necessity for Involuntary Commitment. A custody order was issued that same day for respondent, and she was transported to Holly Hill Hospital in Wake County, North Carolina. The following day, respondent was examined at Holly Hill by psychiatrist Dr. Enrique Lopez. After reviewing respondent's medical records and daily staff reports, Dr. Lopez diagnosed respondent with schizoaffective disorder bipolar type.
Thereafter, Dr. Lopez submitted a Request for Hearing, and an initial commitment hearing was held before the Honorable Ned Mangum, Judge presiding, on 30 December 2016. Dr. Lopez testified that during her time at Holly Hill, respondent was exhibiting "severe paranoid ideation, hyperactivity, agitation, poor judgment, [and] poor insight." It was Dr. Lopez's expert opinion that respondent had not been taking her medications before being committed, and she would not continue to take them without supervision. Dr. Lopez testified that respondent needed additional time at Holly Hill and requested an additional thirty-day commitment. He also testified that should respondent be released, "[h]er paranoia would escalate, she's likely to put herself in very dangerous situations where she could be hurt by others. She's likely to not take medications endangering herself even more[,]" and also that "[s]he's likely to not do basic things to take care of herself, such as eating, protecting herself against the cold temperatures, [and] engaging in conversations that could be dangerous with people."
Respondent testified that she would stop taking the anti-psychotic medication prescribed by Dr. Lopez, but that she would take an anti-psychotic medication prescribed by another doctor in her community, although she did not know the name of the drug. She also testified that she would continue to see her community doctor, but stated she intended to move from Lexington to Burlington to live with an aunt if she were released from Holly Hill.
Finding that she was mentally ill and a danger to herself, Judge Mangum ordered respondent committed to Holly Hill for thirty days. On 13 January 2017, respondent filed written notice of appeal.
_________________________
On appeal, respondent contends the trial court erred by involuntarily committing her where the trial court's findings of fact did not establish she was a danger to herself. Specifically, respondent argues that nothing in the trial court's findings demonstrates a reasonable probability that respondent would suffer serious physical debilitation within the near future without treatment and, as such, the order involuntarily committing her should be reversed. We disagree.
On appeal of a commitment order our function is to determine whether there was any competent evidence to support the "facts" recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerousness to self or others were supported by the "facts" recorded in the order. We do not consider whether the evidence of respondent's mental illness and dangerousness was clear, cogent and convincing. It is for the trier of fact to determine whether the competent evidence offered in a particular case met the burden of proof.
In re Whatley , 224 N.C. App. 267, 270-71, 736 S.E.2d 527, 530 (2012) (quoting In re Collins , 49 N.C. App. 243, 246, 271 S.E.2d 72, 74 (1980) ).
"To support an inpatient commitment order, the [trial] court shall find by clear, cogent and convincing evidence that the respondent is mentally ill and dangerous to self, as defined in G.S. § 122C-3(11) a...." N.C. Gen. Stat. § 122C-268(j) (2015). The trial court must also make findings establishing that the respondent is mentally ill and dangerous to herself or others. N.C. Gen. Stat. § 122C-271(b)(2). Once a trial court has found that an individual meets commitment criteria, "[t]he court shall record the facts that support its findings." N.C.G.S. § 122C-268(j). In this case, the trial court concluded that respondent was dangerous to herself.
An individual demonstrates dangerousness to self if, within the relevant past, that individual has acted in such a way to show:
I. That he would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; and
II. That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself [.]
N.C.G.S. § 122C-3(11)(a)(1) (emphasis added). "[S]pecifically ... the failure of a person to properly care for his/her medical needs, diet, grooming and general affairs meets the test of dangerousness to self." In re Zollicoffer , 165 N.C. App. 462, 469, 598 S.E.2d 696, 700 (2004) (quoting In re Lowery , 110 N.C. App. 67, 72, 428 S.E.2d 861, 864 (1993) ).
"[A]n inpatient commitment order may be supported by a finding that the 'respondent is mentally ill ... and dangerous to himself.' We do not believe we should hold a finding in addition to this should be required to support a commitment order." In re Crouse , 65 N.C. App. 696, 698-99, 309 S.E.2d 568, 570 (1983) (alteration in original).
In the instant case, respondent's treating physician testified at the hearing as follows:
Q. ... Do you have an opinion as to whether [respondent] is mentally ill?
A. Yes.
Q. And what is that opinion?
A. Schizo-she has a diagnosis of schizoaffective disorder with bipolar type.
....
Q. And on what basis- on what basis did you base your opinion that [respondent] is mentally ill?
A. She has symptoms of schizoaffective disorder but with a bipolar type. She has several symptoms which are fairly common for this type of the illness.
Q. Can you elaborate on those symptoms?
A. Yeah. She's got quite a severe paranoid ideation, hyperactivity, agitation, poor judgment, poor insight.
....
Q. Was she-was she compliant with [her anti-psychotic] medication before coming?
A. I don't believe so. She was so disorganized and so paranoid that I am convinced that she was not taking her medications correctly.
Q. Will [respondent] take the medication without supervision?
A. Not as of now.
Q. Okay. And what does-what would happen if she were to stop taking her medications?
A. I think the symptoms that she had before coming to the hospital would only worsen.
....
Q. In your opinion, what would happen if [respondent] was released today?
A. Her paranoia would escalate, and she's likely to put herself in very dangerous situations where she could be hurt by others. She's likely to not take medications, endangering herself even more.
Q. And could you elaborate on why you think that she would be a danger to herself or she could be-or others in danger?
A. Her paranoia is a symptom of psychosis, and a state of psychosis-it's unpredictable what she could do. But she's likely to not do basic things to take care of herself, such as eating, protecting herself against the cold temperatures, engaging in conversations that could be dangerous with people.
In other words, her poor judgment could put her at very high risk.
Based on this and other evidence, the trial court made the following findings of fact in support of its conclusion of law that respondent was a danger to herself:
Based on the credible expert testimony of Dr. Enrique Lopez, the Respondent's treating psychiatrist, the Court finds that the Respondent is mentally ill in that the Respondent suffers from Schizo Affective Disorder, bipolar type. This is based on the Respondents [sic] symptoms of severe paranoid ideations [,] hyperinsomnia[,] hyperactivity, poor judgment [and] insight. These symptoms are clear in that Respondent does not believe she is mentally ill, that the Dr. [and] the Respondent's mother are conspiring against her [and] that the Respondent does not know the name of her anti-psychotic medication that she was previously prescribed by her "Dr. G." Respondent states that she takes Percocet, [A]mbien, [and] [V]alium. Respondent states that she does not intend to take Depakote as prescribed by her treating physician.
The Court further finds that she is a danger to herself [and] in need of further hospitalization based on the statements of the Respondent [and] the credible testimony of Dr. Lopez. Dr. Lopez testified that the patient was not taking proper medication prior to her commitment [and] that without supervision her condition would worsen in that he fears her paranoia would escalate [and] that she would likely put herself in danger from others. This is supported by the Respondent's statement that she would not take her medicine as proscribed by the [D]r. It is further supported by the Respondent's rambling statements about building a business [and] using a large amount of money that appear to be disorganized thought.
It is also supported by the fact that the evidence shows [and] the Dr [.] believes that the patient was non compliant with her medication prior to hospitalization [and] her apparent belief that she does not have a mental illness.
The Court is further concerned about the respondent's dangerousness to herself by Respondent's statement that her mother is conspiring with the hospital to take her money when it appears that the respondent's mother helped respondent get housing [and] was concerned about her daughter's well being to seek an IVC[1 ] to get her help. Respondent states she intends to leave Lexington [and] live in Burlington with her aunt. The court does not believe this Respondent that she would receive any mental health care in Burlington.
Dr. Lopez testified generally about respondent being "likely to put herself in very dangerous situations where she could be hurt by others[,]" and "likely to not take medications, endangering herself even more." He also testified that respondent is mentally ill in that she suffers from schizoaffective disorder bipolar type. See In re W.R.D. , --- N.C. App. ----, ----, 790 S.E.2d 344, 348 (2016) ("To support an involuntary commitment order, the trial court is required to find two distinct facts by clear, cogent, and convincing evidence: first that the respondent is mentally ill, and second, that he is a danger to himself or others." (citation omitted) (quoting Lowery , 110 N.C. App. at 71, 428 S.E.2d at 863-64 ) ).
Thus, where, as here, the trial court's findings of fact are supported by the evidence and establish that respondent was mentally ill and a danger to herself, the trial court's conclusion of law that respondent posed a danger to herself is supported by the findings of fact and, accordingly, the trial court's order is
AFFIRMED.
Report per Rule 30(e).
Judges BERGER and MURPHY concur.

"IVC" is shorthand for "involuntary commitment."